EXHIBIT
C

**From:** Palmer, Riley
**To:** Sportiello, Jane G.; O"Neil, Heather; Titus, Courtney R.; Kellington, Thomas; Knutson, Amy N.; Stoltz, Kary A.
**Cc:** Smith, Steve
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al
**Date:** Thursday, November 5, 2026 3:52:37 PM

***** **CAUTION:** This email originated from an outside source. Do not click links or open attachments unless you know they are safe. *****

Jane,

Your questions below are irrelevant and simply demonstrate your ongoing pattern of misconstruing Plaintiff's discovery responses and good faith efforts to try to resolve this dispute. For example, you are wrong to imply that there is a device list in the Samsung accounts that we are not providing to you. Plaintiff's answers to your interrogatories list the only device that was marked as registered on either of the accounts. There are no other devices listed on the accounts.

We have continuously provided explanations to your various questions, but you keep shifting the goalposts on what it is you seem to want. For example, you now seem to be requesting ten years of Plaintiff's cell phone bills. This is an entirely new request for the production of documents, weeks after the close of discovery, and which we would have (and do) objected to on the basis of scope, burden, and relevance. More broadly, what began as your illogical anger over our inability to produce a specific, **inculpatory** text thread from 2016 has morphed into a far-flung, ever-changing, and unfounded campaign against our discovery process generally.

It is clear that any further efforts by us to engage with your shifting pursuit of all manner of irrelevant information will not narrow the issues for the Court's consideration on your upcoming motion. It would simply change, yet again, what you say you're trying to compel. And, indeed, it is unclear to us at this point (a day before your motion must be filed) what the scope of your motion even is.

We have done all we can to avoid this motion, which we believe is a waste of the Court's resources. However, at this stage, it seems most efficient for you to bring your motion so that we can understand the scope of what it is you actually seek and the parties can make their legal arguments from there.

Best,
Riley

**Riley Palmer** (she/her)
Associate Attorney
(612) 256-3256 | rpalmer@nka.com

4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(877) 448-0492 | fax: (612) 338-4878
www.nka.com | bio | contact card

The information in this transmission may be attorney privileged and/or confidential information. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

---

**From:** Sportiello, Jane G. <jsportiello@nd.gov>
**Sent:** Wednesday, November 4, 2026 2:25 PM
**To:** O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>; Knutson, Amy N. <anknutson@nd.gov>; Stoltz, Kary A. <kstoltz@nd.gov>
**Cc:** Smith, Steve <ssmith@nka.com>; Palmer, Riley <rpalmer@nka.com>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

Hi Riley,

We've completed an initial review of Plaintiff's supplementation. I have some questions which, if answered by you, would narrow the scope of the requested relief in our forthcoming Motion to Compel.

It looks like Plaintiff is now disclosing two Samsung accounts, one of which was associated with the email address schimetzkathleen@gmail.com and the other with the email address schimetzk@gmail.com. (P. 9). One of these accounts was apparently created on July 2, 2017 (p. 5), and one of them was "registered to" the Samsung Galaxy A01 (p. 12).

1. Can you produce the emails from the above-referenced Gmail accounts which contain the account registration and login emails discussed on page 9?

2. Which email address was associated with which Samsung account? Are the accounts differentiated by dates of use? (I.e., perhaps Plaintiff used one account earlier with the unknown device, and one later?)

3. Since one Samsung account apparently gives the information that it is registered to the Galaxy A01, couldn't you simply check the other account to figure out the unknown device? And/or use the Samsung accounts in general to get a full device history? We would certainly appreciate and believe we are entitled to a complete device list.

4. Plaintiff states she can only obtain her Verizon billing history from 2025 (p. 12). I understand that her online portal may only show bills from 2025, but couldn't she simply contact customer service to get the older bills? I believe they retain old records for at least 10 years. And older Verizon history would be another route to figure out her

device history, since Verizon would know which devices were on its network through her account.

5. Over the last few months, you have written at length about the use of ESI vendors and professional collection of Plaintiff's phone. Were the searches of the two Samsung and two Google accounts you reference on page 12 conducted by third-party ESI vendors? Or were they conducted by Plaintiff herself?

We'd appreciate any light you are willing to shed.

Best,

**Jane Gayou Sportiello**
Assistant Attorney General
North Dakota Office of Attorney General
500 North 9th Street
Bismarck, ND 58501
(701) 328-3640

**Confidentiality Notice:**
This electronic mail transmission is intended for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

---

**From:** O'Neil, Heather <honeil@nka.com>
**Sent:** Monday, November 2, 2026 3:15 PM
**To:** Sportiello, Jane G. <jsportiello@nd.gov>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>; Knutson, Amy N. <anknutson@nd.gov>; Stoltz, Kary A. <kstoltz@nd.gov>
**Cc:** Smith, Steve <ssmith@nka.com>; Palmer, Riley <rpalmer@nka.com>
**Subject:** Schimetz v. North Dakota Office of the Adjutant General, et al

***** **CAUTION:** This email originated from an outside source. Do not click links or open attachments unless you know they are safe. *****

Counsel,

Attached please find served upon you Plaintiff's Third Supplemental Answers and Objections to State Defendants' First Set of Interrogatories in the above matter.

Thanks,
Heather

**Heather J. O'Neil, MnCP**
Senior Paralegal | Minnesota Certified Paralegal
(612) 256-3216 | honeil@nka.com

4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(877) 448-0492 | fax: (612) 338-4878
www.nka.com

**EMPLOYEE & CONSUMER RIGHTS | Visit Us on the Web:**

The information in this transmission may be attorney privileged and/or confidential information. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

**From:** Palmer, Riley
**To:** Sportiello, Jane G.; Smith, Steve
**Cc:** O"Neil, Heather; Titus, Courtney R.; Kellington, Thomas
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al
**Date:** Monday, October 26, 2026 3:28:30 PM

***** **CAUTION:** This email originated from an outside source. Do not click links or open attachments unless you know they are safe. *****

Jane,

You are correct to assume we disagree regarding your motion to compel. As for SJ, it is our position that the filing deadline should be January 8, 2027.

Best,
Riley

**Riley Palmer** (she/her)
Associate Attorney
(612) 256-3256 | rpalmer@nka.com

4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(877) 448-0492 | fax: (612) 338-4878
www.nka.com | bio | contact card

The information in this transmission may be attorney privileged and/or confidential information. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

---

**From:** Sportiello, Jane G. <jsportiello@nd.gov>
**Sent:** Monday, October 26, 2026 11:45 AM
**To:** Palmer, Riley <rpalmer@nka.com>; Smith, Steve <ssmith@nka.com>
**Cc:** O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

Hi Riley,

I'm not exactly sure what you mean by "as soon as possible," but we take the position that our forthcoming Motion to Compel needs to be briefed first.

We are planning to move the Court today to set a briefing deadline for the Motion to Compel

for **November 6, 2026**, which would hopefully allow us to see your supplement first and narrow the issues for resolution. We also plan to ask that the MSJ deadline be reset for **Dec 14, 2026**, which would give time for the MTC to be fully briefed.

Obviously we assume you disagree with the need for any of this, but if you have another specific date you think would be better for MSJ, feel free to let me know.

Best,

**Jane Gayou Sportiello**
Assistant Attorney General
North Dakota Office of Attorney General
500 North 9th Street
Bismarck, ND 58501
(701) 328-3640

**Confidentiality Notice:**
This electronic mail transmission is intended for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

---

**From:** Palmer, Riley <rpalmer@nka.com>
**Sent:** Friday, October 23, 2026 3:14 PM
**To:** Sportiello, Jane G. <jsportiello@nd.gov>; Smith, Steve <ssmith@nka.com>
**Cc:** O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

***** **CAUTION:** This email originated from an outside source. Do not click links or open attachments unless you know they are safe. *****

Jane,

As we informed you during the meet and confer on Oct. 21, 2026, we estimate we will be able to supplement our discovery responses within two weeks. However, as we also told you, that timeline

may vary in the event the ESI vendor encounters difficulties or delays extracting data from the flip phone.

To be more specific, we informed you of our plan to supplement Plaintiff's responses to OTAG's Interrogatory Nos. 2 and 6, that we have sent the jitterbug flip phone to our ESI vendor for analysis, and that we believe this further review will not change the conclusion that the device contains no responsive text messages. Of course, if any responsive text messages are found on the device, we will promptly produce them.

We also proposed compromise positions to try to address some of your concerns, which you rejected. You instead informed us that, notwithstanding the foregoing, you plan to move to compel the entire contents of Plaintiff's jitterbug flip phone and to compel every message exchanged between Plaintiff and Ms. Boardman—regardless of responsiveness—since the date such data were collected earlier in the case.

We maintain our position, communicated to you on the call, that SJ should be added back onto the calendar as soon as possible. We are prepared to update the Court accordingly if you agree.

Best,
Riley

**Riley Palmer** (she/her)
Associate Attorney
(612) 256-3256 | rpalmer@nka.com

4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(877) 448-0492 | fax: (612) 338-4878
www.nka.com | bio | contact card

The information in this transmission may be attorney privileged and/or confidential information. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

---

**From:** Sportiello, Jane G. <jsportiello@nd.gov>
**Sent:** Friday, October 23, 2026 12:24 PM
**To:** Palmer, Riley <rpalmer@nka.com>; Smith, Steve <ssmith@nka.com>
**Cc:** O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

Good afternoon Riley,

Do you have an estimated date by which the supplementation you referenced on our call Wednesday would be complete?

Best,

**Jane Gayou Sportiello**
Assistant Attorney General
North Dakota Office of Attorney General
500 North 9th Street
Bismarck, ND 58501
(701) 328-3640

**Confidentiality Notice:**
This electronic mail transmission is intended for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

---

**From:** Sportiello, Jane G.
**Sent:** Tuesday, October 20, 2026 10:30 AM
**To:** 'Palmer, Riley' <rpalmer@nka.com>; 'Smith, Steve' <ssmith@nka.com>
**Cc:** O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

Riley, if my characterizations are wrong, please let me know exactly how. If I am misunderstanding something about what appear to be contradictions in your position, I am very eager to know.

All of my questions below are aimed at the information Plaintiff is obligated to provide in response to our outstanding interrogatories. But *even if* our outstanding interrogatories had not preemptively asked about any losses of ESI, Plaintiff's own sworn deposition testimony, along with her amended interrogatory responses, independently indicates that she failed to fulfill her obligations under Rule 26, Rule 34, and Rule 37(e). We are entitled to inquire into what appears to be her failure to comply with those rules. Your resistance to our inquiries over the last few months is unjustified.

As for other issues, during our status conference last week, we didn't get into the parameters of Plaintiff's duty to supplement as outlined in my letter to the Court. Judging from your letter, it appears you interpreted our position to mean that we sought daily formal collection of ESI from Plaintiff's phone. As it is hopefully clear from my letter, that is not our position. I remain hopeful that further communication will resolve these conflicts. We will give you a call tomorrow.

Best,

**Jane Gayou Sportiello**
Assistant Attorney General
North Dakota Office of Attorney General
500 North 9th Street
Bismarck, ND 58501
(701) 328-3640

**Confidentiality Notice:**
This electronic mail transmission is intended for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

---

**From:** Palmer, Riley <rpalmer@nka.com>
**Sent:** Monday, October 19, 2026 5:05 PM
**To:** Sportiello, Jane G. <jsportiello@nd.gov>; Smith, Steve <ssmith@nka.com>
**Cc:** O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

***** **CAUTION:** This email originated from an outside source. Do not click links or open attachments unless you know they are safe. *****

Jane,

I strongly object to your characterizations below, especially your suggestion that there are contradictions in our representation to you and the Court. You identify five items that you are "interested" in learning more about. The purpose of a meet and confer is not to satisfy your curiosity. It is to discuss the scope of your discovery requests and our objections to the same. We will be prepared to discuss OTAG's Interrogatories No. 2, 3 and 6. We hope to find a productive middle ground.

You also generally mention that you may have multiple other items for discussion. It would facilitate a more productive conversation if you identify all topics for discussion in advance. Doing so will allow us to investigate any of your questions and increase the likelihood we'll be able to give you substantive responses on the call. Please clarify these additional topics as soon as possible.

We are available to discuss Wednesday, Oct. 21 at 2:30 pm.

Best,
Riley

**Riley Palmer** (she/her)
Associate Attorney
(612) 256-3256 | rpalmer@nka.com

4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(877) 448-0492 | fax: (612) 338-4878
www.nka.com | bio | contact card

The information in this transmission may be attorney privileged and/or confidential information. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

---

**From:** Sportiello, Jane G. <jsportiello@nd.gov>
**Sent:** Friday, October 16, 2026 1:13 PM
**To:** Palmer, Riley <rpalmer@nka.com>; Smith, Steve <ssmith@nka.com>
**Cc:** O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

Good afternoon Riley,

I write pursuant to the Court's order yesterday directing us to engage in a second meet and confer. Based on the new information elicited at the status conference, I look forward to discussing the following points:

1. **Recent Search of Jitterbug**. In your letter dated September 10, 2026, in response to my inquiry about the phone mentioned by your client at her deposition, you wrote:

> "After an exhaustive search, she has been unable to locate the Tracphone **or any other device not previously searched**."

Yesterday, however, you stated that after the deposition, Plaintiff located and mailed you the Jitterbug, which you then searched. Accordingly, it appears she *did* locate a device not previously searched – *i.e.*, the Jitterbug. I am interested in understanding the apparent contradiction between your September 10 letter and what you told the Court yesterday, as well as your failure to provide this information earlier.

2. **Failure to Search Jitterbug**. On June 18, 2026, Plaintiff stated in response to Interrogatory #2 that she used the Jitterbug from "approximately 2016-2018." This date range indicates that the Jitterbug would have been the phone cited in Plaintiff's Complaint, filed on February 2, 2025 and reading as follows:

> ¶ 62. Ms. Koppinger witnessed the sexual assault.
> ¶ 63. Ms. Schimetz later **sent Mr. Zent a text,** warning him to never touch her again.
> ¶ 64. **Mr. Zent responded**, apologizing for his behavior and promising to never touch her in a manner evocative of the Candidate; confirming the connection between his sexual assault and Ms. Schimetz's political speech.

Indeed, looking to the record, Plaintiff mentions this text exchange far earlier than February 2, 2025. *See, e.g.*, SCHIMETZ0000319 (document dated March 22, 2022 mentioning text exchange).

Given that the existence of this text has been documented since March 2022 – and given Rule 37(e)'s requirement that electronically stored ESI be preserved – I am interested to learn why the Jitterbug was never searched until *after* Plaintiff was deposed in July 2026, particularly given your representations that Plaintiff had done everything possible to obtain the text exchange.

3. **Range of Dates of Smartphone Searches**. Looking back through our correspondence, I note another apparent inconsistency. You write on Page 2 of your October 14, 2026 letter:

> Plaintiff explained to Defendants that she has produced responsive data for the full scope of data she has been able to collect. That includes certain responsive Facebook messenger data as far back as 2017 **and responsive phone data**

**back to 2021**. Plaintiff has told Defendants that the phone data she collected and searched extends back to the first use of the oldest smartphone that Plaintiff has been able to identify, **a Samsung Galaxy A01 first used in November 2020.**

It appears from the above that you were able to collect phone data back to 2021. Yet the final sentence of the paragraph – as well as your email to me dated October 6, 2026 – indicates that data was collected from "the Galaxy A01 in **November 2020**." And of course, your produced text messages themselves only date back from **April 2021**. We hope to receive an explanation of this discrepancy.

4. **Jitterbug Contents**. I was interested to hear that the Jitterbug you searched after the deposition had what you described as spam messages postdating July 2016. I hope to hear more about those messages and how their presence on the phone might be explained.

5. **Phone Bills**. I look forward to learning whether Plaintiff will, as the Court suggested, be consulting past phone bills or bank statements to determine further information about the unknown devices or devices she used between 2016 and 2020.

We also have several outstanding questions relating to the other matters we discussed at the conference, as well as those items relating to supplementation addressed in my last letter that the Court only briefly touched on.

I would be available to meet and confer at the below times – let us know what works for you. Have a nice weekend!

Tuesday, Oct 20 – anytime between 9:30 AM and 11:30 AM
Wednesday, Oct 21 – anytime between 2:00 PM and 3:30 PM
Thursday, Oct 22 – 11:30 AM
Friday, Oct. 23 – anytime between 2:00 PM and 3:30 PM

Best,

**Jane Gayou Sportiello**
Assistant Attorney General
North Dakota Office of Attorney General
500 North 9th Street
Bismarck, ND 58501
(701) 328-3640

Nichols Kaster
ATTORNEYS AT LAW

**Riley Palmer**
Direct: (612) 256-3256
Fax: (612) 338-4878
rpalmer@nka.com

4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(877) 448-0492

October 14, 2026

**VIA EMAIL**
Magistrate Judge Clare R. Hochhalter
220 East Rosser Avenue, Suite 426
PO Box 670
Bismarck, ND 58502-0670
NDD_J-Hochhalter@ndd.uscourts.gov

**Re:** ***Kathleen Ronning-Schimetz v. North Dakota Office of the Adjutant General and Stephen P. Herda,* in his individual capacity**
**Court File No. 1:25-cv-00023 DLH/CRH**

Your Honor:

I write on behalf of Plaintiff Kathleen Ronning-Schimetz in advance of the informal discovery conference requested by Defendants[1] and scheduled for October 15, 2026 at 1:30 pm.

Plaintiff is uncertain as to the specific issues Defendants intend to raise at the forthcoming discovery conference. It is Plaintiff's understanding that all specifically identified issues regarding Defendants' alleged deficiencies with Plaintiff's discovery responses have been resolved. Defendants know Plaintiff is in the process of obtaining additional medical records and indicated they have no objection to the expected timeline for that supplementation; and Defendants knew before scheduling this conference that Plaintiff planned to supplement her document production with a specific message conversation about which Defendant inquired. Plaintiff assumes that Defendants' remaining issues arise from their unsubstantiated and generic dissatisfaction with certain discovery responses and novel view of the duty to supplement.

## I. PLAINTIFF'S DATA SOURCES

As best Plaintiff can tell, Defendants' remaining dispute centers on their desire for her to provide narrative interrogatory responses disclosing privileged and otherwise protected information describing how she went about her document collection and review process. While Plaintiff objects to those interrogatories, she has still tried to work with Defendants to explain relevant information about the data available to her.

[1] As used herein "Defendants" refers to the remaining two defendants, the North Dakota Office of the Adjutant General ("OTAG") and Stephen Herda. Both are represented by the Office of the North Dakota Attorney General. Plaintiff and the third, separately represented defendant recently stipulated to the dismissal of Plaintiff's claims against him.

Plaintiff explained to Defendants that she has produced responsive data for the full scope of data she has been able to collect. That includes certain responsive Facebook messenger data as far back as 2017 and responsive phone data back to 2021. Plaintiff has told Defendants that the phone data she collected and searched extends back to the first use of the oldest smartphone that Plaintiff has been able to identify, a Samsung Galaxy A01 first used in November 2020.

Plaintiff signed interrogatory responses stating that between November 2020 and July 2016 she does not know what phones she used. Plaintiff has been transparent with Defendants regarding her efforts to obtain data from that period. Plaintiff informed Defendants that she explored whether it is possible to use the disclosed devices (which are in her possession) to obtain any data that predates their use and explored if she could do so through Verizon, Google (which sometimes backs up Android devices), or the device manufacturers (Samsung and Motorola) on the off chance those sources carry older data.

Plaintiff told Defendants that there are no Google backups which would contain data not already produced. Plaintiff also disclosed to Defendants that she consulted with an ESI expert to assess other possible routes to obtain additional data. She informed Defendants that the ESI consultant advised that it is extremely unlikely that Verizon, Samsung, or Motorola would have any data from 2016–20 as a result of the way in which backup data works from a technical perspective. Even if whatever device(s) Plaintiff used in that period were to have been backed up to those services, data from unknown device(s) are very unlikely to be recoverable now because mobile carrier and device backup services require periodic device activity or account synchronization to prompt them to maintain older backup data. And, more recent backup data typically overwrites older backup data. Plaintiff told Defendants that the ESI expert advised her that further investigation would require forensic analysis, costs would very quickly balloon into the thousands of dollars, and that she should still not expect to obtain responsive data from those efforts.

Plaintiff has also been transparent with Defendants regarding her efforts to recover a specific message conversation with the OTAG employee whom OTAG itself determined sexually assaulted Plaintiff. Plaintiff alleges that the assault occurred sometime in late 2016 or 2017 and the assailant apologized for his conduct via text message shortly thereafter. The apology message was sent during the period in which, per her interrogatory responses, Plaintiff does not know what phone she used. The only other phone Plaintiff has been able to identify is a flip phone in use from approximately 2014 to July 2016. This is undisputedly before the assailant's apology text would have been sent.[2]

It is worth highlighting that this apology text, if it existed, would support Plaintiff's case. It is in her interest to obtain it. Despite her best efforts, she has been unable to do so. Any prejudice arising from that failure operates against her, not against Defendants. And, Defendants' counsel, who represented the assailant (a former employee) at his deposition, recently disclosed that they

---

[2] The earliest date the sexual assault could have happened is October 7, 2016, when the Donald Trump Access Hollywood tape was released. Plaintiff alleges that, when discussing Mr. Trump's recorded statement that he could "grab 'em by the pussy," the assailant said "like this" and then grabbed Plaintiff's genitals.

did not take steps themselves to obtain this data from the assailant until shortly before his deposition at which time the assailant had apparently already caused it to be lost.

Defendants have not identified a specific Request for the Production of Documents that they believe is deficient. Instead, it appears that Defendants are simply disappointed with the documents produced and would like Plaintiff to explain all her discovery efforts in answers to their interrogatories. Defendants' desire for her to do so, including providing even more granular information about the various devices and data sources and her review methodologies, amounts to discovery on discovery. This Court has observed that requests for discovery on discovery "should not be permitted lightly." *In re Whatley v. Canadian Pac. Rwy. Ltd.*, Case No. 1:16-cv-74, 2021 WL 1951003, at *10 (D.N.D. May 14, 2021). This Court has favorably quoted the observation that discovery on discovery "should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Id.* (quoting *Catlin v. Wal-Mart Stores, Inc.*, 2016 WL 7974070, at *1 (D. Minn. Sept. 22, 2016)). To be permitted, there must be "an adequate factual basis" for such additional discovery. *Id.* (quoting *Catlin*, 2016 WL 7974070, at *1). Defendants have not, and could not, make that showing here and Plaintiff is prepared to brief the issue if this dispute requires motion practice. Plaintiff has repeatedly advised Defendants of her efforts to collect potentially responsive data and that she has produced all responsive data obtained. Even if dissatisfying for Defendants, that is the end of the road.

## II. PLAINTIFF'S OBLIGATION TO SUPPLEMENT

Defendants may also be planning to discuss with the Court their unusual theory of the duty to supplement under Fed. R. Civ. P. 26(e). Plaintiff does not dispute that she has a duty to supplement her discovery responses pursuant to the Federal Rules. She has confirmed the same to Defendants and has previously supplemented her responses. However, Defendants recently shared their belief that Plaintiff's duty to supplement applies minute-by-minute and day-by-day.

Defendants informed Plaintiff that they believe any time anything even potentially responsive occurs on Plaintiff's cell phone, it must immediately be reviewed by counsel and produced to Defendants. This is an untenable proposal offered without citation to any authority. It is time-intensive and costly to collect data from a cell phone. A typical cell phone collection ranges from $1,000–$1,500 just to obtain the data. While expensive, doing so can be valuable because it permits document review and production compliant with ESI best practices. That is why Plaintiff collects data in this manner when preparing for discovery. However, it is unreasonable to argue that she must continuously engage in this process. Doing so would not only waste counsel's time by requiring counsel to be in a constant state of document collection and review, but it would also waste money in the form of hard costs. To be sure, Plaintiff does not dispute her obligation to supplement. But that obligation does not extend so far as to require a daily collection and review of potentially responsive data.

In employment cases like this one, supplementation is typically comprised of periodic updates to a plaintiff's wage loss and emotional distress damages. That is typically made in the form of additional IRS Form W-2s as they become available and updated records from mental healthcare providers. When a plaintiff discusses their emotional state by text, supplementation can require additional review and disclosure of phone data. All of this, however, typically occurs after summary judgment and before trial because the data that comes into existence over the course of

litigation has no bearing on the questions of liability addressed at summary judgment. Plaintiff will continue to comply with her continuing obligation to supplement discovery responses. Plaintiff need not engage in a daily review of phone and other data. The parties are on the verge of briefing summary judgment. Those motions ought to be the parties' focus at this time, not a manufactured dispute about matters irrelevant to Defendants' liability.

Thank you for your assistance in this matter.

Sincerely,

**NICHOLS KASTER, PLLP**

Riley Palmer

STATE OF NORTH DAKOTA
**OFFICE OF ATTORNEY GENERAL**
www.attorneygeneral.nd.gov
(701) 328-2210

**Drew H. Wrigley**
ATTORNEY GENERAL

**CIVIL LITIGATION**
**NATURAL RESOURCES AND**
**NATIVE AMERICAN AFFAIRS**
500 NORTH 9TH STREET
BISMARCK, ND 58501-4509
(701) 328-3640 FAX (701) 328-4300

October 14, 2026

**VIA EMAIL: ndd_J-Hochhalter@ndd.uscourts.gov**

**Re:** **Ronning-Schimetz v. North Dakota Office of the Adjutant General, et al.**
**Case No. 1:25-cv-00023 DLH/CRH**

Dear Judge Hochhalter:

Thank you for allowing us the opportunity to brief this dispute.[1] The parties have worked diligently to address this conflict but have reached an impasse on two last issues: the extent of Plaintiff's obligations to supplement ESI even after her phone has been formally collected, and, Plaintiff's obligation to answer three specific interrogatories.

This matter first came to light in Plaintiff's deposition, when she was asked about text messages she had exchanged with Paul Zent (a former employee of the State whom she alleges sexually assaulted her) on the day of the alleged assault. Ex. A, Schimetz Dep., 113-114. As of the date of her deposition (July 27, 2026), Plaintiff had not produced the messages.

Plaintiff testified that the messages were sent from an older, non-smartphone device, and they were not loaded onto her current smartphone. Ex. A, Schimetz Dep. at 114:3-14. Then the following exchange ensued about the older, non-smartphone device:

> **Question:** Okay. Do you still physically have the phone?
> **Answer:** I believe I do.
> **Question:** Okay. And where would that be located?
> **Answer:** In my office in my house.

Ex. A, Schimetz Dep., 114:16-20. To date, despite repeated requests, State Defendants have not learned what happened to this phone.

At first, Plaintiff's testimony merely indicated a routine need for discovery supplementation; this need was amplified when Plaintiff's friend Mary Boardman was deposed in August and testified to further undisclosed messages. Unfortunately, resulting discussions between the undersigned and Ms. Palmer (counsel for Plaintiff) have revealed a deeper conflict regarding Rule 26 obligations.

## 1. Discovery Background.

Back in May, State Defendants had served several interrogatories on Plaintiff specifically related to discovery obligations. In her initial responses in June 2026, Plaintiff answered some interrogatories but objected to answering others.

[1] Please note that while State Defendants provide exhibits with this letter, they are for reference purposes only.

> **Interrogatory 2** sought information about cell phones used during Plaintiff's employment with State Defendants, including, for each device, "whether [Plaintiff] still has access to the contents of that phone." Plaintiff provided a list of devices, but she refused to disclose whether she still had access to their contents. Among other objections, she stated that the phrase "*still has access to contents of that phone*" was vague.
>
> **Interrogatory 3** asked Plaintiff "to identify how far back [Plaintiff's] text messages go on [Plaintiff's] current phone." Plaintiff objected and provided no substantive response. Among other objections, she stated that the phrase "*how far back those text messages g*o" was vague.
>
> **Interrogatory No. 6** asked Plaintiff to describe steps taken to preserve responsive information, including the scope of preservation and "any deletions or losses, and any restoration efforts." Plaintiff objected and provided no substantive response.

*See* Ex. B, Interrogatory Responses Excerpt.

**2. Schimetz and Boardman Depositions**.

Schimetz testified as set forth above at her deposition in July. The following month, Plaintiff's friend and former co-worker, Mary Boardman, was deposed pursuant to State Defendants subpoena. The subpoena also sought all communications between Ms. Boardman and Plaintiff.

At the deposition itself, Ms. Boardman was asked whether she had any written messages exchanged with Plaintiff. *See* Ex. C., Boardman Deposition at 86:6-8. Ms. Boardman said yes and actually began reading aloud Facebook messages exchanged with Plaintiff off her phone. *Id.* at 86-87. Further, she testified to a message exchanged with Plaintiff about the deposition itself. *Id.* at 92:8-12. On the record, Ms. Boardman agreed to take screenshots of all their communication and provide them to undersigned counsel. 87:22-23.

Unfortunately, Ms. Boardman never provided the requested messages and, after September 1, stopped responding to counsel at all – until yesterday afternoon. Yesterday, October 13, Ms. Boardman contacted counsel for State Defendants and wrote, "I am still trying to find more documentation between myself and [Plaintiff], but I had not saved much of our Facebook correspondence, as I had no idea it would ever be necessary to save."

It is unclear how Ms. Boardman cannot find the Facebook messages now when she clearly had access to them during the deposition. State Defendants are considering all options with regards to enforcement of the subpoena.

**3. Efforts to Obtain Supplementation in August, September, and October**.

Undersigned counsel first wrote Ms. Palmer on August 21, seeking all relevant messages from the non-smart phone which Ms. Schimetz testified was in her office at home.[2] Undersigned counsel also requested full answers to State Defendants' earlier interrogatories 2, 3, and 6, now that

[2] All correspondence between counsel is provided in Exhibit D.

Plaintiff testified to the existence of a device which was clearly in her possession and had not yet been searched.

In response, on September 10, 2026, Plaintiff provided an updated response to Interrogatory 2 with a revised list of devices, adding two more devices and revising the years that the various devices were used. *See* Ex. B. She removed the reference to a "Tracphone," replacing it with "unknown device(s)" without a phone number.[3] She still maintained her earlier objections and continued to decline to answer whether she had access to the contents of any particular device (Interrogatory 2) and whether any losses of data had occurred (Interrogatory 6).

State Defendants responded on September 24, taking issue with Plaintiff's continued refusal to fully answer Interrogatories 2, 3, and 6. In this same letter, State Defendants also requested the messages exchanged between Ms. Boardman and Plaintiff about the deposition, since by this point Ms. Boardman had failed to provide them. Ms. Palmer responded:

> Plaintiff previously produced responsive text messages exchanged with Ms. Boardman. Your letter seems to seek information **that allegedly came into existence during the discovery period and after Plaintiff's phone data were collected**. Producing data generated since then would require Plaintiff to repeat the costly and time-consuming process of collecting data from her phone, which is unreasonable at this stage. Any such data could have no relevance to the forthcoming summary judgment motions, would needlessly drive up costs, and would itself create further unnecessary delay. Plaintiff does not dispute that a phone may need to be collected again under some circumstances, such as after a particularly long pre-trial delay. **But Plaintiff's duty to supplement does not require her to continuously produce cell phone data to Defendant as it comes into existence.** She need not, and will not, expend time and resources needlessly collecting irrelevant data at this stage.

Ex. D, Palmer Letter, September 25, 2026 (emphasis added)

State Defendants were surprised by this letter and responded that Rule 26(e) absolutely does require Plaintiff to produce any newly generated responsive and relevant messages. Counsel noted that a screenshot of the messages between Boardman and Plaintiff would be acceptable and emphasized that *all* responsive and relevant messages between Boardman and Plaintiff needed to be produced. Counsel continued to request answers to Interrogatories 2, 3, and 6. Ms. Palmer responded by agreeing to provide screenshots of the specific message testified to by Boardman.[4] However, Ms. Palmer asserted that "a formal collection and review of all data that has come into

---

[3] Somewhat confusingly, while removing the Tracphone from her list of devices, Ms. Palmer stated in the accompanying letter that Plaintiff "was unable to locate the Tracphone" after an "exhaustive search." It is unclear whether this search occurred before or after to Plaintiff's testimony regarding the old phone in her office, and whether the Tracphone was the old phone in her office, and in general why the Tracphone was removed from her list of devices.

[4] Ms. Palmer also explained that the phone data collected and searched extends back to the first use of a "Galaxy A01" smartphone in November 2020. This information was appreciated and answered one of State Defendants' outstanding questions as to how far back Plaintiff's messages were searched. However, it also raises more questions about the collection process, because the "Galaxy A01" device was not disclosed until September of 2026.

existence during the course of litigation since the last collection is unreasonable at this stage and certainly outside our supplementation obligations."

Undersigned counsel and Ms. Palmer spoke on October 7. Both attorneys agreed that Plaintiff has a duty to supplement under the Federal Rules but interpret that duty differently. Undersigned counsel explained that Plaintiff had an **ongoing affirmative obligation** to monitor and produce information in her possession, even *after* her phone has been "collected" for purposes of litigation, simply by monitoring her own phone and giving any required supplement to her attorney. Ms. Palmer responded that a non-attorney is unable to discern which information would be responsive/relevant.

Undersigned counsel asked *when* Plaintiff's phone had been collected, and Ms. Palmer declined to respond. On the subject of the unanswered interrogatories 2, 3, and 6, counsel tried to address Plaintiff's "vagueness" objections by expanding on the phrase "access of the contents to a phone." Ms. Palmer maintained her objections. The parties are thus at an impasse.

**4. Instant Dispute**.

At least as understood by State Defendants, Plaintiff's position appears to be that the forensic collection of a phone only occurs once in litigation, after which a party is **not** under an affirmative duty to monitor their own phone and produce relevant ESI to their attorney (who would then produce it to the opposing party, if necessary) due to their inability to make legal conclusions about the relevance of documents. As a practical matter, this means that Plaintiff ceased to exercise her duty to supplement after the collection of her phone(s), which occurred at a date unknown to State Defendants. This is improper.

In light of this position, Plaintiff's refusals to answer straightforward questions – what happened to the non-smart phone she testified about, whether she has access to the contents of past devices, and whether any losses of ESI have occurred – are concerning. Plaintiff testified to the presence of an old phone at her deposition with highly responsive communications. State Defendants are entitled to know what happened to that phone specifically, and State Defendants are entitled to proactive supplementation of any responsive and relevant ESI not yet produced.

State Defendants hope that the Court's guidance can lead both parties to greater understanding in this matter.

Sincerely,

/s/ Jane G. Sportiello

Jane G. Sportiello
Assistant Attorney General

ks
Attachments

cc: Riley Palmer – rpalmer@nka.com

**From:** Sportiello, Jane G.
**To:** "Palmer, Riley"; "Smith, Steve"
**Cc:** O"Neil, Heather; Titus, Courtney R.; Kellington, Thomas
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al
**Date:** Tuesday, October 6, 2026 2:02:00 PM

Hi Riley,

I appreciate the information that Plaintiff's search in this matter extended back to the first use of the Galaxy A01 first used in November 2020. This is exactly the sort of information we have been looking for.

As to your criticism that we did not raise these topics before, I will respond that this entire dispute only came to light at Plaintiff's deposition in July, when we were surprised to hear that she had in her custody an older device which appears to have never been searched for responsive evidence. This led to my letter of August 21, which led to you disclosing on September 9 – for the first time – the existence of the Galaxy A01 smartphone, as well as a different sequence for other devices. Surely we cannot be faulted for failing to realize that your initial response to our Interrogatory No. 2 was incorrect. Nor could we anticipate that Ms. Boardman would testify to the existence of recent messages being exchanged that Plaintiff had not already disclosed. And we certainly could not anticipate that Ms. Boardman would fail to comply with the terms of her subpoena and produce the messages to us herself.

Hopefully these all end up being minor issues, but we do have a right to have them addressed. We are certainly committed to proceeding as efficiently as possible. I'll give you a call at 10 AM tomorrow.

Best,

**Jane Gayou Sportiello**
Assistant Attorney General
North Dakota Office of Attorney General
500 North 9th Street
Bismarck, ND 58501
(701) 328-3640

**Confidentiality Notice:**
This electronic mail transmission is intended for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and

delete the original message.

---

**From:** Palmer, Riley <rpalmer@nka.com>
**Sent:** Tuesday, October 6, 2026 10:34 AM
**To:** Smith, Steve <ssmith@nka.com>; Sportiello, Jane G. <jsportiello@nd.gov>
**Cc:** O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

***** **CAUTION:** This email originated from an outside source. Do not click links or open attachments unless you know they are safe. *****

Jane,

We'll produce screenshots of the referenced Boardman messages soon. We maintain that a formal collection and review of all data that has come into existence during the course of litigation since the last collection is unreasonable at this stage and certainly outside our supplementation obligations. Since you took issue with it, I'll also note that "collecting" data or a "collection" is a well-known ESI term of art and merely reflects our habit of complying with ESI best practices. *See The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 (2018).

As we've stated in prior correspondence, responsive data has been produced for the full scope of data we've been able to collect. As you know from Plaintiff's document productions, that includes certain responsive Facebook messenger data as far back as 2017 and responsive phone data back to 2021. I'll further represent to you that phone data we've collected extends back to the first use of the oldest smartphone identified in response to your IROG No. 2, the Galaxy A01 in November 2020.

We obviously continue to disagree with your various other mischaracterizations below of both our correspondence and the record. It is also notable that you first began raising alleged issues with Plaintiff's discovery responses on the discovery deadline. Plaintiff completed her rolling productions more than six months earlier, yet you raised no issues. Indeed, you did not even serve discovery requests until five months after Defendant Johnson did so.

If you would still like a call, I am available tomorrow at 10:00 a.m.

Best,
Riley

**Riley Palmer** (she/her)
Associate Attorney

(612) 256-3256 | rpalmer@nka.com

4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(877) 448-0492 | fax: (612) 338-4878
www.nka.com | bio | contact card

The information in this transmission may be attorney privileged and/or confidential information. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

---

**From:** Smith, Steve <smith@nka.com>
**Sent:** Friday, October 2, 2026 8:44 AM
**To:** Jane G. Sportiello <jsportiello@nd.gov>
**Cc:** Palmer, Riley <rpalmer@nka.com>; O'Neil, Heather <honeil@nka.com>; Courtney R. Titus <ctitus@nd.gov>; Thomas Kellington <rkellington@nd.gov>; Dayna Fredrickson <dayna@pearce-durick.com>
**Subject:** Re: Schimetz v. North Dakota Office of the Adjutant General, et al

Jane,

Sorry for the delay in responding. This will have to wait until Monday when Riley is back.

Steve

On Sep 30, 2026, at 8:48 AM, Sportiello, Jane G. <jsportiello@nd.gov> wrote:

Hi Steve,

I received an automated message that Riley is out of the office until October 5. Are you free to confer with us on this in the meantime, or should we wait until she gets back? I believe the issue of the Boardman texts, at least, is pretty straightforward.

Best,

**Jane Gayou Sportiello**
Assistant Attorney General
North Dakota Office of Attorney General
500 North 9th Street

Bismarck, ND 58501
(701) 328-3640

**Confidentiality Notice:**
This electronic mail transmission is intended for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

---

**From:** Sportiello, Jane G.
**Sent:** Tuesday, September 29, 2026 5:36 PM
**To:** 'Palmer, Riley' <rpalmer@nka.com>; O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>; Stoltz, Kary A. <kstoltz@nd.gov>; Knutson, Amy N. <anknutson@nd.gov>; Zachary E. Pelham <zep@pearce-durick.com>; Dayna Fredrickson <dayna@pearce-durick.com>
**Cc:** smith <smith@nka.com>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

Hi Riley,

Thanks for your letter. Rule 26(e) absolutely requires Plaintiff to produce the new messages she exchanged with Boardman related to the lawsuit, even if those messages were sent after the initial "collection" of her phone. Certainly you do not contend that the messages described by Boardman regarding the deposition itself are irrelevant to the litigation. *See* Boardman Dep. at 92:8-12. I also note that Plaintiff must produce any messages exchanged since the day of the deposition if those messages are related to this case.

I don't know exactly what you mean by "collecting" a phone, but on the subject of burden, we do not demand native versions of any messages at this time. Screenshots of the text chain between them should be fine and could be easily provided.

Furthermore, your letter still doesn't explain which devices and/or date range of messages are 1) accessible to Plaintiff and 2) were actually searched. This is even more confusing now because your latest letter discusses the "collection" of Plaintiff's phone data as though it were a one-time event. But Plaintiff's list of devices changed substantially between her initial response to our Interrogatory No. 2 and your supplement earlier this month. Were the newly-disclosed devices

searched? And where does the device that Plaintiff testified was in her office at home play into all this? *See* Schimetz Dep. at 114: 3-20. Direct answers to interrogatories 2, 3, and 6 would eliminate all of this confusion.

Assuming you still disagree with the above regarding both your supplementation obligations with the Boardman messages and your responses to our interrogatories, please let me know when you are free for a call regarding these matters. We are available at the below times:

| | |
|---|---|
| Tomorrow (Wednesday): | 10:00 AM |
| Thursday: | Between 10:00 AM and 1:30 PM |
| Friday: | Between 9:00 AM and 2:00 PM |

Thanks and have a good evening.

Best,

**Jane Gayou Sportiello**
Assistant Attorney General
North Dakota Office of Attorney General
500 North 9th Street
Bismarck, ND 58501
(701) 328-3640

**Confidentiality Notice:**
This electronic mail transmission is intended for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

---

**From:** Palmer, Riley <rpalmer@nka.com>
**Sent:** Friday, September 25, 2026 4:39 PM
**To:** Sportiello, Jane G. <jsportiello@nd.gov>; O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>; Stoltz, Kary A. <kstoltz@nd.gov>; Knutson, Amy N. <anknutson@nd.gov>; Zachary E. Pelham

<zep@pearce-durick.com>; Dayna Fredrickson <dayna@pearce-durick.com>
**Cc:** smith <smith@nka.com>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

******* CAUTION:** This email originated from an outside source. Do not click links or open attachments unless you know they are safe. *****

Jane,

Please see attached.

Have a good weekend,
Riley

**Riley Palmer** (she/her)
Associate Attorney
(612) 256-3256 | rpalmer@nka.com

4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(877) 448-0492 | fax: (612) 338-4878
www.nka.com | bio | contact card

The information in this transmission may be attorney privileged and/or confidential information. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

---

**From:** Sportiello, Jane G. <jsportiello@nd.gov>
**Sent:** Thursday, September 24, 2026 4:30 PM
**To:** Palmer, Riley <rpalmer@nka.com>; O'Neil, Heather <honeil@nka.com>; Titus, Courtney R. <ctitus@nd.gov>; Kellington, Thomas <rkellington@nd.gov>; Stoltz, Kary A. <kstoltz@nd.gov>; Knutson, Amy N. <anknutson@nd.gov>; Zachary E. Pelham <zep@pearce-durick.com>; Dayna Fredrickson <dayna@pearce-durick.com>
**Cc:** Smith, Steve <smith@nka.com>
**Subject:** RE: Schimetz v. North Dakota Office of the Adjutant General, et al

Thank you! I will keep all the highlights including the designation “unopposed.” Have a good night, everyone.

Nichols Kaster
ATTORNEYS AT LAW

Riley Palmer
Direct: (612) 256-3256
Fax: (612) 338-4878
rpalmer@nka.com

4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(877) 448-0492

September 25, 2026

**VIA EMAIL**
Courtney R. Titus
Jane Sportiello
R. Thomas Kellington
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
ctitus@nd.gov
jsportiello@nd.gov
rkellington@nd.gov

**Re:** ***Ronning-Schimetz v. North Dakota Office of the Adjutant General, et al.***
**Court File No. 1:25-cv-00023 DLH/CRH**

Ms. Sportiello:

I write in response to your September 24, 2026 letter alleging ongoing and new deficiencies in Ms. Schimetz's document production. I do not think it is productive at this stage to continue a back and forth on your alleged deficiencies when we have plainly satisfied and are continuing to satisfy our discovery obligations. If you would like a call to discuss the below, please let me know. Very briefly:

**A. Phone Data**

We have gone to frankly extraordinary lengths to attempt to recover the text conversation with Mr. Zent. As explained multiple times already, we have been unable to do so. We are concerned by the new disclosure in your most recent letter that OTAG failed to ensure the preservation of Mr. Zent's data despite being put on notice of its existence and relevance during its investigation.

We have produced responsive information from the full scope of data we have been able to access. Your ongoing insistence that we place it in the terms of "how far the text messages go back" misunderstands how cell phone data and modern evidence preservation methods work. As you know from Plaintiff's discovery responses, other than the Jitterbug, the oldest phone Plaintiff knows she used is the Samsung Galaxy A01 and we have produced data from the time period that device was in use. We explored whether it is possible to use the disclosed devices (which are in her possession) to obtain any data that predates their use and we explored if we could do so through Verizon, Google (which sometimes backs up Android devices), or the device manufacturers (Samsung and Motorola) on the off chance those sources carry older data. There are no Google backups which would contain data not already produced. We learned from an ESI consultant that it is extremely unlikely that Verizon, Samsung, or Motorola would have any data from 2016–20 as a result of the way in which backup data works from a technical perspective (even if whatever device(s) Plaintiff used in that period were to have been backed up to those services). We were

told that the possibility cannot be 100% foreclosed, but that we should not expect to be able to recover any data and the cost to try would very quickly balloon into the thousands of dollars. Based on this advice, we believe we have more than complied with our discovery obligations and any further search would be unreasonable and disproportionate to the needs of the case.

As for Tracfone, it is the name of a cell network, not a device manufacturer. However, and as demonstrated at Plaintiff's deposition, it is also a colloquial term for budget phones on non-traditional phone plans. Plaintiff did not testify that she used a Tracfone. She testified only "I believe it -- that was on an older phone of mine, **like** a Tracphone, just one -- I hadn't -- didn't have a smart phone at that time." You asked if it was "on a Tracphone or a Jitterbug?" Plaintiff responded "I don't know. But it was -- it was something like that, you know, like a monthly plan and a cheap phone . . .." Plaintiff has searched exhaustively to find more information regarding any such device(s) and has been unable to do so.

It is worth pausing again to note that if data confirming the text message exchange with Mr. Zent existed, it would support Plaintiff. If there is any prejudice resulting from the unavailability of this data, it operates against her. If we believed there was any reasonable or possible way she could obtain that data, we would have already done so.

**B. Medical Records**

[redacted] These and all such records go to damages and have no bearing on the forthcoming summary judgment motions.

**C. Boardman Documents**

Plaintiff previously produced responsive text messages exchanged with Ms. Boardman. Your letter seems to seek information that allegedly came into existence during the discovery period and after Plaintiff's phone data were collected. Producing data generated since then would require Plaintiff to repeat the costly and time-consuming process of collecting data from her phone, which is unreasonable at this stage. Any such data could have no relevance to the forthcoming summary judgment motions, would needlessly drive up costs, and would itself create further unnecessary delay. Plaintiff does not dispute that a phone may need to be collected again under some circumstances, such as after a particularly long pre-trial delay. But Plaintiff's duty to supplement does not require her to continuously produce cell phone data to Defendant as it comes into existence. She need not, and will not, expend time and resources needlessly collecting irrelevant data at this stage.

Sincerely,

**NICHOLS KASTER, PLLP**

Riley Palmer

cc: Counsel for Defendant Clark V. Johnson

STATE OF NORTH DAKOTA
OFFICE OF ATTORNEY GENERAL
www.attorneygeneral.nd.gov
(701) 328-2210

Drew H. Wrigley
ATTORNEY GENERAL

**CIVIL LITIGATION**
**NATURAL RESOURCES AND**
**NATIVE AMERICAN AFFAIRS**
500 NORTH 9TH STREET
BISMARCK, ND 58501-4509
(701) 328-3640 FAX (701) 328-4300

September 24, 2026

**VIA EMAIL: rpalmer@nka.com**

Riley Palmer
Nichols Kaster
Attorneys at Law
4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402

**Re: Ronning-Schimetz v. North Dakota Office of the Adjutant General, et al.**
**Case No. 1:25-cv-00023 DLH/CRH**

Dear Ms. Palmer:

Thank you for your response of September 10. I am hopeful that we are making progress in resolving these last disputes, but several matters below require your attention.

1. **Missing Text Messages**.

Thank you for your response on this subject, and for your updated answer to Interrogatory No. 2. I believe there must still be some misunderstanding on this point which we can hopefully resolve.

To start, the assertions on page 2 of your letter regarding Paul Zent are not entirely correct. First, we did not "refuse" to produce anything. Despite our overbreadth objection to Request No. 18, we produced every communication between Mr. Zent and Plaintiff that we could identify. *See, e.g.*, emails at OTAG_002622; OTAG_002633; OTAG_002677. Second, to the extent you assert that Mr. Zent's text messages were in OTAG's possession, custody, or control such that they should have been initially searched in response to Plaintiff's Request No. 18, I would note that Mr. Zent is not a party and in fact was terminated by OTAG *before* Plaintiff filed with the EEOC and subsequently brought this lawsuit. His personal text messages certainly cannot be said to be in OTAG's possession, custody, or control.

But despite the fact that we had no obligation to do so, when we made contact with Mr. Zent before his deposition, we immediately asked him to search for any messages with Plaintiff. As you correctly note, any message between Plaintiff and Mr. Zent would have been accessible to Mr. Zent at least at some point. But upon our inquiry regarding these messages, Mr. Zent informed us that he obtained a new phone two years ago and turned in

his old phone to AT&T, and is thus unable to search it. He searched his current device, but it contains no messages whatsoever with Plaintiff.

Simply put, the information in the above paragraph is what we seek with respect to Plaintiff, who – unlike Mr. Zent – is a party to this lawsuit, with obligations related to document retention, search, and production that do not apply to Mr. Zent. Unfortunately, your September 10 supplement does not provide this information, and makes the situation more confusing. Your September 10 letter mentions a Tracphone, but the accompanying updated interrogatory response *omits* the Tracphone mentioned in the original response, and simply states that Plaintiff used an "unknown device" with an apparently unknown phone number from 2016-2020.[1] You also declined to amend your responses to Interrogatories 3 and 6.

The baseline question of what devices Plaintiff currently possesses, how far the text messages go back on those devices, and which of those devices Plaintiff searched, cannot be avoided as "discovery on discovery," particularly when you served similar RFPs on us at the beginning of this litigation which we answered without objection.[2] *See, e.g.,* Herda's Response to Plaintiff's Interrogatories 4 and 6 (explaining that he had a two-year-old smart phone with messages dating back to 2019 which he would search). Further, the underlying *fact* of whether or not Plaintiff currently has access to the contents of any particular phone, and whether or not any particular phone was searched, is not attorney-client privileged information.

To the extent that we have been unclear up to this point, allow me to clarify that we do not seek *any* communications or legal advice between you and Plaintiff. We simply seek the *facts* relating to electronic devices in Plaintiff's control as set forth in Interrogatories 2, 3, and 6, which again are similar to the information we just provided with regard to Mr. Zent and the information we already provided with regard to Mr. Herda. Hopefully this clarification will allow you to fully answer interrogatories 2, 3, and 6. If not, please let me know as soon as possible.

**2. Medical Records**.

[redacted]

[redacted]

[1] We find it unlikely that Plaintiff does not know her own phone number from 2016-2020, and therefore assume this omission was an error.

[2] Indeed, if any justification were needed for such question, it was provided by Plaintiff herself, when she testified to possessing an older phone which had apparently not been searched as of the time of her deposition.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

3. **Boardman Supplementation**.

As you will recall, on August 21, 2026, Mary Boardman was deposed in this matter pursuant to our subpoena. The subpoena demanded production of several categories of documents; most relevant here, communications between Ms. Boardman and Plaintiff.

[3] Records regarding any response to this interrogatory were sought in Johnson's RFP No. 32.

At her deposition, Ms. Boardman testified that she possessed a range of communications with Plaintiff, going so far as to read them some of them off of her phone during the deposition. *See, e.g.,* Boardman Deposition at p. 86-87. When asked to search for all responsive messages and provide them, Ms. Boardman responded, "Sure. Sure. I can take screenshots and send you everything I've got." Boardman Deposition at 87:22-23.

Unfortunately, Ms. Boardman has provided only a single page of notes[4] and has not provided any of the promised communications between herself and your client. Even more unfortunately, she has stopped responding to our attempts to follow up. We are considering our options with respect to enforcement of the subpoena, but in the meantime, we note that the messages testified to by Ms. Boardman should be available to your client as well. Significantly, at least one set of these messages appears relevant to the case. *See* Boardman Deposition at 92:8-12 ("I sent Katie a note that I had received a subpoena for the deposition, and she sent me a note back stating, I'm sorry – sorry that you're involved, but – and I can't talk to you further about it.")

While we of course understand that Plaintiff does not have possession, custody, or control over documents held by Ms. Boardman, Plaintiff does have an ongoing obligation pursuant to Rule 26(e) to supplement her *own* discovery responses.[5] Since it now appears that these communications are not forthcoming from Ms. Boardman, we would request that Plaintiff provide them herself, along with any other communications regarding the lawsuit that have not yet been disclosed.

Thank you for your attention to this matter and your efforts to resolve these issues so far. Should you disagree with our position here or simply have questions regarding the discovery we are seeking, we are available to meet and confer at any time.

Sincerely,

Jane G. Sportiello
Assistant Attorney General

ks

[4] This was produced to you yesterday.
[5] Communications between Plaintiff and Ms. Boardman related to the case would be responsive to RFPs 4, 22, 23, 25, etc.

Nichols Kaster
ATTORNEYS AT LAW

**Riley Palmer**
Direct: (612) 256-3256
Fax: (612) 338-4878
rpalmer@nka.com

4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(877) 448-0492

September 10, 2026

**VIA EMAIL**
Courtney R. Titus
Jane Sportiello
R. Thomas Kellington
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
ctitus@nd.gov
jsportiello@nd.gov
rkellington@nd.gov

**Re:** ***Ronning-Schimetz v. North Dakota Office of the Adjutant General, et al.***
**Court File No. 1:25-cv-00023 DLH/CRH**

Counsel:

I write in response to your August 21, 2026 letter alleging deficiencies in Ms. Schimetz's document production.

**A. Phone Data**

Your letter mischaracterizes Plaintiff's answers and objections to the corresponding interrogatories. Plaintiff answered to the greatest degree possible without disclosing attorney-client communications or information protected by the work product doctrine. While Plaintiff maintains that OTAG has not, and could not, demonstrate that it is entitled to discovery on discovery, I will provide brief context regarding the text messages she exchanged with Mr. Zent after he sexually assaulted her.

Plaintiff's deposition testimony that she texted with Mr. Zent on an "older phone" that was not a smartphone should have come as no surprise to you given she disclosed that she used two older phones in her first responses to your interrogatories (a Jitterbug and a Tracfone). You then asked about both of those devices at her deposition, and she could not recall specifically which device she used at the time of the texts in question. On further review, she believes the Jitterbug device was in use from approximately 2014 through July 2016. She thereafter used a pre-paid Tracfone for a period of time, which she assumes to have begun when she stopped using the Jitterbug in or around July 2016. After an exhaustive search, she has been unable to locate the Tracfone or any other devices not previously searched. She will serve corresponding supplemented interrogatory responses shortly. If and when further supplementation to any of her interrogatory responses becomes appropriate, she will do so as required by the Federal Rules.

I must also note that the communications you seek in your August 21, 2026 letter were exchanged between Plaintiff and a witness whom you represent. The data, if extant, should therefore also be available to you without Plaintiff's involvement. Yet, when Plaintiff requested that OTAG produce Mr. Zent's communications, you refused, stating that "OTAG is unable to conduct a good faith search . . .." (OTAG Answer to Plf.'s RFP 18.) As I stated to you during our August 20, 2026 phone call, Plaintiff also would prefer to have these messages in the record. Unfortunately, assuming you also searched for them as required (notwithstanding your response to the contrary), they appear to be unavailable to any of the parties. Plaintiff has already more than satisfied her obligations under Rule 26.

**B. Medical Records**

[redacted]

Sincerely,

**NICHOLS KASTER, PLLP**

Riley Palmer

cc: Counsel for Defendant Clark V. Johnson

STATE OF NORTH DAKOTA
OFFICE OF ATTORNEY GENERAL
www.attorneygeneral.nd.gov
(701) 328-2210

Drew H. Wrigley
ATTORNEY GENERAL

CIVIL LITIGATION
NATURAL RESOURCES AND
NATIVE AMERICAN AFFAIRS
500 NORTH 9TH STREET
BISMARCK, ND 58501-4509
(701) 328-3640 FAX (701) 328-4300

August 21, 2026

**VIA EMAIL: rpalmer@nka.com**

Riley Palmer
Nichols Kaster
Attorneys at Law
4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402

Re: **Ronning-Schimetz v. North Dakota Office of the Adjutant General, et al.**
**Case No. 1:25-cv-00023 DLH/CRH**

Dear Ms. Palmer:

Please see below regarding two areas of discovery that we believe require supplementation based on Ms. Ronning-Schimetz's deposition testimony.

1. **Missing Text Messages.**

Some months ago, State Defendants had asked for information regarding Plaintiff's electronic devices and any discoverable information available on the same. *See* Interrogatories No. 2, 4, 3, and 6. Plaintiff provided some information, but objected to providing the remainder on various grounds. Among the information Plaintiff declined to provide was 1) whether she still had access to the contents of her older phones; 2) how far back in time text messages are available and, 3) any steps taken to preserve discoverable ESI and any losses or deletions. *See* Plaintiff's Supplemental Answers and Objections to State Defendants' Interrogatories, Nos. 2, 3, and 6.

At Plaintiff's deposition on July 27, 2026, she was asked about the alleged sexual assault by Paul Zent. *See* Transcript of Deposition of Kathleen Ronning-Schimetz at p. 113-114. Specifically, she testified that the evening of the incident, she texted Zent "and said something to the effect of if he ever touches me again, I'm going to HR." *Id.* at 113:16-18. When asked whether she still had the text message, Plaintiff responded that she believed it "was on an older phone of mine," that was not a smart phone. When asked if she physically had the phone, she responded, "I believe I do," and that it was located "[i]n my office in my house."

It is our position that Ms. Schimetz needs to produce this text message, as well as any responsive text messages located on any phones in her possession, custody and control.

Furthermore, upon review of Plaintiff's text messages, we note that the earliest text message she produced was from April of 2021. *See* SCHIMETZ0001564. At this point, it is impossible for State Defendants to know whether earlier messages were unavailable to Plaintiff, or – as seems possible after her deposition testimony – such messages were available to her and were simply not searched. As such, State Defendants ask that Plaintiff provide a complete answer to Interrogatories No. 2, 3, and 6.

While we understand that the device Plaintiff described at her deposition may be an older phone and the data less accessible than data on a smart phone, we would accept photographs of responsive text messages so long as they are legible.

**2. Missing Medical Records.**

[redacted]

[redacted]

Sincerely,

Jane G. Sportiello
Assistant Attorney General

ks